UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cr-20328-LENARD/GOODMAN

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

MICHAEL MENDOZA,

          Defendant.
_____/



FILED BY _RB_
May 12, 2014
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

## INFORMATION

The United States Attorney charges that:

### General Allegations

At all times relevant to this Information,

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Part B of Medicare covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness. The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized

intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

4. Medicare generally required that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

5. Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

6. Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that had been treated. Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

7. Medicare did not cover programs involving primarily social, recreational, or diversionary activities. Psychosocial programs that provided only a structured environment, socialization, or vocational rehabilitation were not covered by Medicare.

8. In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically. A CMHC, medical clinic, and

physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

9. An Assisted Living Facility ("ALF") meant any facility licensed by AHCA, whether operated for profit or not, which provided housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who were not relatives of the owner or administrator.

10. A Halfway House was a facility that supported the reintegration of persons who had been recently released from prison or jail, or assisted individuals who were recovering from various drug and alcohol addictions.

### Defendant, Related Entities, and Related Persons

11. Defendant **MICHAEL MENDOZA**, a resident of Miami-Dade County, was the president of Network Resource Consultant, Inc., a Florida corporation, and he served as a patient recruiter for American Therapeutic Corporation ("ATC") who would pay and cause the payment of kickbacks in exchange for referring Medicare beneficiaries to attend ATC.

12. ATC was a Florida corporation originally established in 2002 and was headquartered in Miami, Florida. ATC operated several purported PHPs throughout Florida, including PHPs at the following addresses: 1801 N.E. 2nd Avenue, Miami, Florida, 33132; 61 Grand Canal Drive, Suite 100, Miami, Florida 33144; 1001 West Commercial Boulevard, Fort Lauderdale, Florida 33309; 4960 North Dixie Highway, Fort Lauderdale, Florida 33334; 27112 South Dixie Highway, Naranja, Florida 33032; 717 East Palmetto Park Road, Boca Raton, Florida 33432; and 4790 North Orange Blossom Trail, Orlando, Florida 32810.

13. Lawrence S. Duran ("Duran"), a resident of Miami-Dade County, was the manager and owner of ATC.

14. Marianella Valera ("Valera"), a resident of Miami-Dade County, was the owner, Chief Executive Officer, president, secretary, and treasurer of ATC.

15. Margarita Acevedo, a/k/a Margarita De la Cruz, a resident of Miami-Dade County, was a Marketing Director of ATC. Acevedo supervised ATC's marketers.

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### (18 U.S.C. § 1349)

From in or around July 2005, through in or around March 2010, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### MICHAEL MENDOZA,

did knowingly and willfully combine, conspire, confederate, and agree with others, known to the United States Attorney, including Duran, Valera and Acevedo, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

16. It was a purpose and object of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things; (a) submitting and causing the submission of false and fraudulent claims to Medicare through ATC for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were never provided; (b) offering and paying kickbacks and bribes to ALF and Halfway House owners and operators as well as patient recruiters who provided and had access to ineligible Medicare

beneficiaries to attend ATC's CMHCs; and (c) receiving kickbacks and bribes to ensure the attendance of these ineligible Medicare beneficiaries at ATC's CMHCs.

### Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

17. **MICHAEL MENDOZA** and his co-conspirators accepted kickbacks in return for recruiting Medicare beneficiaries to be placed at ATC which billed Medicare for PHP Services that were not medically necessary and not provided.

18. **MICHAEL MENDOZA** and his co-conspirators filed and caused to be filed false and fraudulent claims with Medicare seeking payment for the costs of PHP services that were not medically necessary and not provided.

19. **MICHAEL MENDOZA** and his co-conspirators caused the submission of false and fraudulent claims to Medicare under the provider number of ATC.

20. As a result of these false and fraudulent claims, ATC was paid by Medicare.

All in violation of Title 18, United States Code, Section 1349.

### CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1. The allegations contained in this Information are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **MICHAEL MENDOZA** has an interest.

2. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction for the offense charged in this Information, **MICHAEL MENDOZA** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures outlined in Title 21, United States Code, Section 853.

*[signature]*
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

*[signature]*
BENJAMIN SINGER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*[signature]*
ALLAN J. MEDINA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLSD

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| vs. | |
| MICHAEL MENDOZA, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant. _____/ | **Superseding Case Information:** |

**Court Division**: (Select One)                    New Defendant(s)           Yes ____   No ____
                                                    Number of New Defendants ____
__X__ Miami   ____ Key West                          Total number of counts ____
____ FTL      ____ WPB     ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   __No__
   List language and/or dialect

4. This case will take   __0__   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                                    (Check only one)
   I    0 to 5 days      __X__               Petty       ____
   II   6 to 10 days     ____                Minor       ____
   III  11 to 20 days    ____                Misdem.     ____
   IV   21 to 60 days    ____                Felony      __X__
   V    61 days and over ____

6. Has this case been previously filed in this District Court? (Yes or No)   __No__
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   __No__
   If yes:
   Magistrate Case No.                  _____
   Related Miscellaneous numbers:       _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of  _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   __X__ No


_____
ALLAN J. MEDINA
DOJ TRIAL ATTORNEY
Court No. AA5501748

*Penalty Sheet(s) attached                                                REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __MICHAEL MENDOZA__

Case No: _____

Count #:     1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

*Max Penalty:    Ten (10) years' imprisonment

Count #:

*Max Penalty:

Count #:

*Max Penalty:

Count #:

*Max Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

## BOND RECOMMENDATION

DEFENDANT: __MICHAEL MENDOZA_____

$100,000 PSB
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   DOJ Atty Allan J. Medina

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   S/A PAT KOETH, FBI
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 14-cr-20328-LENARD/GOODMAN |
| Michael Mendoza, | ) | |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*